IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

KIMBERLY HEAD,                         )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )    Case No. CIV-09-172-FHS
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security Administration,               )
                                       )
            Defendant.                 )

**REPORT AND RECOMMENDATION**

Plaintiff Kimberly Head (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 6, 1975 and was 32 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade, attending special education classes. She obtained her GED. Claimant worked in the past as a telemarketer,

3

inserter, and delicatessen kitchen helper. Claimant alleges an inability to work beginning September 2, 1992, due to bipolar disorder, depression, personality disorder, sleep apnea and other respiratory difficulties, headaches, congestive heart failure, and morbid obesity.

## Procedural History

Claimant previously received supplemental security income due to depression until the benefits were discontinued on October 1 and December, 2002 when Claimant did not appear for a consultative examination to determine if her condition had improved. As a result, on March 17, 2005, Claimant protectively filed for supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application was denied initially and upon reconsideration. On September 13, 2007, an administrative hearing was held before ALJ Deborah L. Rose in Paris, Texas. On November 21, 2007, the ALJ issued an unfavorable decision on Claimant's application. On February 5, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with restrictions.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to discuss significantly probative evidence which conflicted with the ALJ's findings; and (2) engaged in an improper RFC evaluation.

**Probative Evidence**

Claimant was admitted in 1991 to the Children's Treatment Center in Winter Haven, Florida for behavioral problems. She was diagnosed at Axis I: Oppositional Defiant Disorder, Dysthymia, Parent/Child Conflict; Axis II: Passive/Aggressive and Histrionic Features; Axis III: Obesity. (Tr. 213-17). Following her discharge, Claimant was placed in an emotionally handicapped special education program on a part-time basis. (Tr. 231-33).

From 1997 through 2000, Claimant had issues with violence and anger, lack of social interaction, and frustration. Her global assessment of function ("GAF") scores ranged from 50 to 55. (Tr. 18-30).

Claimant was hospitalized from March 5, 2001 until August 10, 2001. Her diagnosis upon admission was Depression and her diagnosis upon discharge was Bipolar I. Her overall improvement was characterized as "slight." (Tr. 247). On March 28, 2001 during her hospitalization, Claimant was diagnosed with Bipolar I, most recent episode manic, hypomanic. Her condition was described as rapid cycling without psychotic features. (Tr. 249).

On September 17, 2002, Claimant's counselor stated Claimant was unable to do work related activities such as walking, standing, or sitting because of her severe obesity. She hears well and speaks well but has difficulty completing tasks. (Tr. 246).

On November 30, 2004, Claimant was again diagnosed as bipolar with a then-current GAF of 46 and a GAF a year prior of 40. (Tr. 277).

On January 4, 2005, Claimant's medication was increased when she reported depression, irritability, and mood swings. Her GAF was assessed at 47. (Tr. 274-76). Through treatment, her GAF improved to 59. (Tr. 273).

On May 9, 2005, a counselor who saw Claimant noted she was depressed due to being over weight and a pregnancy during marital problems. (Tr. 272).

On June 18, 2005, Claimant underwent a consultative mental

6

status examination with Dr. Patrick Turnock. Claimant was diagnosed at Axis I: Major Depressive Disorder, moderate, recurrent, rule out bipolar disorder, rule out post traumatic stress disorder; Axis II: Personality Disorder, NOS; Axis III: None; Axis IV: Problems with primary support group, financial, employment, social support. (Tr. 281). Claimant reported she was charged with arson fire at her home when she sprinkled gasoline around the foundation to combat a musty odor. She did not know how it caught fire. She received three years of probation, a requirement to pay $10,000.00 in restitution, and the requirement for a psychological evaluation. (Tr. 280). Dr. Turnock found this behavior to be consistent with one suffering from bipolar disorder while in the manic phase, indicating poor judgment in actual situations. (Tr. 281).

On July 27, 2005, a Psychiatric Review Technique was completed on Claimant by Dr. Karen Kendall. She determined Claimant suffered from Affective Disorders and personality disorders. Dr. Kendall concluded Claimant was moderately limited in the areas of difficulty in maintaining social functioning and difficulty in maintaining concentration, persistence, or pace while mildly limited in the areas of restriction of activities of daily living. (Tr. 335).

7

In the Mental Residual Functional Capacity Assessment completed by Dr. Kendall, she found Claimant was markedly limited in the area of the ability to interact appropriately with the general public, moderately limited in the areas of the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. 339-40).

On October 27, 2005, Claimant's counselor wrote a letter to the Social Security Administration, stating Claimant's ability to work is minimized due to her physical problems in connection with her obesity. The letter also detailed emotional problems which included no social acceptable skills, being defensive, argumentative, and her tendency to immediately attach to someone to later despise them. Claimant was noted to exhibit traits of Borderline Personality Disorder. She blamed others for her problems and did not take responsibility for herself. Her diagnosis was at Axis I: Primary: Bipolar II, Most recent episode depressed, Secondary: Parent/Child Relational Problem; Axis III: Extremely Obese; Axis IV: Social environment, primary support, economic; Axis V: GAF 49. (Tr. 368).

Claimant continued to experience problems with depression and fatigue throughout the remainder of 2005 and through 2006.

In March of 2007, Claimant continued to suffer from serious depression and problems with trust in others. Her GAF at that time was 45. (Tr. 382-85). In April of 2007, Claimant reported episodes of major depression, stating she suffered from constant sadness, irritability and anger, hopelessness, low self-esteem, anhedonia, weight gain, constant fatigue, attempted suicide twice in her teens, and mood swings. (Tr. 386). Her GAF remained at 45. (Tr. 392).

The ALJ determined Claimant suffered from the severe impairments of personality disorder, bipolar disorder, asthma, sleep apnea, and obesity. (Tr. 20). She also found Claimant could perform light work with the additional restrictions that Claimant avoid excess exposure to dust and fumes, have no more than occasional contact with the public, and be limited to simple one or two step work processes. (Tr. 22).

Claimant first takes issue with the ALJ's characterization of the opinion of Dr. Turnock in June of 2005 that "claimant should be able to return to the work environment." (Tr. 26). In fact, Dr. Tunock stated in his opinion that "[d]espite the immediate stability apparent in her mental status exam, [Claimant's] fairly recent history of unstable behavior does indicate that she will probably continue to have extreme difficulty maintaining steady

employment. A return to the work environment may be possible once her mental status has been stabilized over a longer period of time." (Tr. 282). The ALJ also omitted Dr. Turnock's findings with regard to Claimant's inability to manage her own benefits due to "poorly conceived and impulsive decision making with serious negative consequences." (Tr. 283).

Claimant's cycling bipolar disorder and the fact she was released after only slight improvement due to a move were characterized by the ALJ as a discharge based upon medical improvement. (Tr. 25, 247). The ALJ made no mention of Claimant's past suicide attempts and continuing struggles with depression.

When evaluating the evidence, the ALJ cannot pick and choose the evidence upon which he relies simply because it supports his finding of non-disability. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). In this case, the ALJ ignored those portions of the reports which tended against his ultimate conclusion on disability. On remand, he should consider the totality of the medical reports and the effect of Claimant's continuing condition upon her ability to maintain employment.

### RFC Evaluation

Since this Court determined the ALJ failed to consider all of the evidence related to Claimant's mental condition and ability to

maintain employment, her RFC assessment must be re-evaluated on remand to encompass all of Claimant's limitations.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE